IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| DAMON NICHOLAS GARCIA, SR., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:17-cv-00595-Y-BP |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of the Social § | |
| Security Administration, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, NOTICE, AND ORDER**

Plaintiff Damon N. Garcia, Sr., ("Garcia") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for disability insurance benefits under Title XVI of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that Senior United States District Judge Terry R. Means **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

**FINDINGS AND CONCLUSIONS**

**I.    STATEMENT OF THE CASE**

Garcia filed an application for disability benefits on September 24, 2014. Transcript ("Tr.") 15, 93, 98. He alleged a disability onset date of May 12, 2014. Tr. 15, 200. The Commissioner denied him benefits initially and upon reconsideration. Tr. 103, 106, 131. Garcia requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held before Judge Darren Hamner on April 18, 2016. Tr. 15. Counsel represented Garcia at the hearing. *Id.* Vocational Expert

("VE") Todd Harden testified at the hearing. *Id.* The ALJ issued his decision on May 27, 2016, finding that Garcia was not entitled to disability benefits. Tr. 41.

In his decision, the ALJ employed the statutory five-step analysis. At step one, he found that Garcia had not engaged in substantial gainful activity since May 12, 2014, the alleged disability onset date. Tr. 16, Finding 2. At step two, the ALJ found that Garcia had the severe impairments of umbilical hernia requiring surgical repair, colonic obstruction and diverticulitis requiring partial colon resection, colostomy, and take down (closure); right cubital tunnel syndrome; peripheral neuropathy; cervical paraspinal muscle hypertonicity; adjustment disorder; depression; and anxiety. Tr. 55, Finding 3. The ALJ further found that Garcia had the non-severe impairments of hypertension and alleged vision problems. Tr. 20, Finding 4. At step three, the ALJ found that Garcia's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. 404(P)(1). Tr. 21, Finding 5. The ALJ determined that Garcia had the residual functional capacity ("RFC") to perform medium work with the following abilities and restrictions: lift and carry fifty pounds occasionally and twenty-five pounds frequently; sit six hours in an eight-hour workday; stand and walk six hours in an eight-hour workday; frequently but not constantly do fingering and handling with the right (dominant) upper extremity; and do detailed but not complex job tasks. Tr. 23, Finding 6. The ALJ found that Garcia could work full-time at this RFC level on a sustained ongoing basis. *Id.*

At step four, the ALJ found that Garcia was capable of performing his past relevant work as a delivery driver, both as he actually performed the job and as it is customarily performed in the national economy. Tr. 38, Finding 7. The ALJ based this conclusion on the VE's testimony and Garcia's own testimony. Tr. 38–39. Though the ALJ was not required to continue to step five, he included an alternate step-five finding in which he noted that a finding of "not disabled" was

also appropriate under the Medical-Vocational Guidelines. Tr. 39. The ALJ found that Garcia was not under a disability at any time through the date of his decision on May 27, 2016. Tr. 41, Finding 10.

The Appeals Council denied Gutierrez's request for review on May 24, 2017. Tr. 1–6. Therefore the ALJ's decision became the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of a request for review.").

## II.  FACTUAL BACKGROUND

Garcia was born on March 24, 1957, and was fifty-seven years old on his alleged disability onset date. Tr. 39, 200. The highest grade of schooling he completed was high school. Tr. 52. His past work included work as a baker helper, delivery driver, stores laborer, and forklift operator. Tr. 85–86.

## III.  STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.* of the SSA controls the disability insurance program as well as numerous regulatory provisions concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). For step one, the claimant must not be presently working at any substantial gainful activity to gain disability benefits. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work

activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572; *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). For step two, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). For step three, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing") found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Before proceeding to step four, the Commissioner must assess the claimant's RFC—"the most the claimant can still do despite his physical and mental limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). For step four, if the claimant's medical status alone does not constitute a disability, the impairment must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). For step five, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). "The claimant bears the burden of showing that [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). "If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley*, 197 F.3d at 198.)

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It

is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV.   ANALYSIS

Garcia raises two issues on appeal. First, he argues that the ALJ provided no basis for his RFC determination of Garcia's ability to perform reaching and handling. Second, he argues that the ALJ improperly rejected Garcia's claim that he suffered from extreme fatigue.

**I.   The ALJ's RFC determination of Garcia's ability to perform reaching and handling was not substantially justified and should be reversed.**

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). If the ALJ does not do so, then his decision is not substantially justified, but reversal is only appropriate if the applicant shows that he was prejudiced. *Id.*

The RFC is the most an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). The responsibility of determining the plaintiff's RFC belongs to the ALJ. *Ripley*, 67 F.3d at 557. "In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence." *Rodriguez v. Colvin*, Civ. A. No. 4:12-CV-825-Y, 2013 WL 6704882, at *4 (N.D. Tex. Dec. 19, 2013). "However, the task of weighing the

5

evidence is the province of the ALJ." *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam). In determining the RFC, the ALJ should usually request a medical source statement describing the types of work that the applicant is capable of performing. *Ripley*, 67 F.3d at 557. If there is no medical statement provided, then the reviewing court should inquire whether the decision of the ALJ is supported by substantial evidence in the existing record. *Id.*

Garcia relies on the Fifth Circuit Court of Appeals decision *Ripley v. Chater*, claiming the ALJ's RFC determination of his reaching and handling ability is not supported by substantial evidence. 67 F.3d at 552. In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence to support that conclusion. 67 F.3d at 557. In finding for the claimant, the Fifth Circuit noted that the record did not clearly establish the effect the claimant's condition had on his ability to work and remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557–58. The Fifth Circuit rejected the Commissioner's argument that the medical evidence that discussed the extent of the claimant's injuries substantially supported the ALJ's conclusion because the court was unable to determine the effects of the claimant's condition, "no matter how small," on his ability to work, absent a report from a qualified medical expert. *Id.* at 557 n.27.

Garcia does not claim any handling or reaching impairments on his disability reports. *See* Tr. 223–279. As the ALJ notes in his decision, medical examinations conducted in 2014 and 2015 repeatedly found that his extremities had a normal range of motion and equal muscle strength. Tr. 26–27. Medical evidence of Garcia's reaching and handling problems begins in 2016. Tr. 34. At

the hearing on April 18, 2016, Garcia testified to pain and weakness in his right shoulder, arm, elbow, and hand that limited his ability to do some work tasks. Tr. 50, 58, 67, 71, 76–77. Garcia had also had two evaluations performed in 2016 on his upper extremities that found issues in those extremities.

On March 14, 2016, Trish Reeves, O.T.R., ("Reeves") at Fort Worth Physical Therapy performed an upper extremity evaluation on Garcia at the request of Garcia's prior attorney. Tr. 482, 484. Testing revealed that Garcia was able to make a complete composite fist, oppose all his digits, and touch fingertips to the distal palmar crease with both hands. Tr. 483. He exhibited normal sensation in his hands, except for a decreased light touch sensation on the volar surfaces of his right thumb and index finger. *Id.* His disabilities of the arm, shoulder, and hand ("DASH") score was 38.3, which indicated mild to moderate impairment. *Id.* The overall findings were that Garcia was able to perform all tasks, was deliberate in placement of objects with his left hand, had normal sensory abilities in his left hand but mild light touch decrease on his right index finger and thumb, had a mildly impaired proximal range of motion and a normal distal range, presented with a mild impairment for fine motor coordination and dexterity, and had moderately impaired strength in both hands (50–60% of normal). Tr. 484.

On March 22, 2016, Scott Stoll, D.O., Ph.D., ("Stoll") at Stoll Neurodiagnostics evaluated Garcia at the request of Garcia's prior attorney. Tr. 486. This examination found that "he has full ROM [range of motion] of the neck and both shoulders for AROM [active range of motion] with mild discomfort on the right." *Id.* It also found that Garcia had decreased pinprick sensation in the fifth finger on the right hand and was positive for Tinel's sign in his right elbow, but was negative in the left elbow and both wrists. *Id.* He had significant tenderness at the bilateral lateral epicondyles and associated extensor tendons, with the right worse than the left. *Id.* The examiner

7

concluded that Garcia suffered from cubital tunnel syndrome, tennis elbows (worse on the right than the left), and muscle spasm. Tr. 490.

Garcia argues that the ALJ committed reversible error because the ALJ had no basis for the RFC determination regarding Garcia's upper extremities: that Garcia could frequently, but not constantly, do fingering and handling with his right upper extremity. ECF No. 14 at 5–6. Additionally, Garcia argues that the ALJ erred by not including a limitation in Garcia's left upper extremity. *Id.* at 6. Garcia contends that these limitations, or lack of limitations, do not find support in any medical opinion. *Id.* at 7.

The Commissioner responds that medical evidence supports the ALJ's RFC determination. ECF No. 15 at 4. The Commissioner notes that no physical examinations prior to 2016 showed any impairment of the upper extremities. *Id.* at 3. The Commissioner also notes that Reeves found that Garcia was moderately or mildly impaired in both upper extremities, and that Garcia himself testified to pain in his right but not his left extremity. *Id.* According to the Commissioner, those facts provide support for the ALJ's determination. *Id.* at 4.

The difficulty on this point is that no single source provides support, by itself, of the ALJ's RFC determination. The 2014–2015 medical records showed no issues with Garcia's upper extremities; Reeves found that Garcia had mild to moderate limitations in both extremities; Stoll discovered medical problems in Garcia's extremities but said nothing about how those conditions limited Garcia's ability to reach or to work; and Garcia himself complained of serious problems with his right hand. Not one of these sources says, as is required under *Ripley*, that Garcia was limited in his working capabilities to what the ALJ determined he could do: "frequent, but not constant, fingering and handling with the (dominant) right upper extremity." Tr. 33, 34. "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever

physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). From the record before the Court, it is unclear which physician's diagnosis, if any, the ALJ chose.

The ALJ in his decision summarizes the medical evidence and then says that he gives only moderate weight to the State Agency Medical Consultants (SAMCs) because he is giving "Mr. Garcia the benefit of the doubt in finding he has been limited to medium work with frequent, but not constant, fingering and handling with the (dominant) right upper extremity." Tr. 33. The ALJ does not say whether he is accepting—or rejecting—a particular medical source or a combination of evidentiary sources in coming to his RFC determination. Based on the various evidentiary sources, Garcia could have no limitation on his ability to work, the non-disabling limitation that the ALJ determined, or a serious disability that precludes him from working. Because the ALJ did not explain his reasoning or utilize a report on Garcia's condition from a physician, the undersigned is unable to determine the effects of Garcia's condition, "no matter how small," on his ability to work. *See Ripley*, 67 F.3d at 557 & n.27. The ALJ therefore did not "develop the facts fully and fairly" relating to Garcia's claim, and, as in *Ripley*, this case should be sent back to the administrative level for a determination from a medical source of the impact that Garcia's potential upper-extremity condition may have on his ability to work. *See id*. at 557.

**II.     The ALJ properly rejected Garcia's subjective complaints of extreme fatigue, as there is no medical evidence of extreme fatigue.**

Garcia argues that the ALJ erred when he rejected Garcia's complaints that Garcia suffers from extreme fatigue. ECF No. 14 at 7. The ALJ found that the objective medical evidence and other evidence did not support Garcia's claim of extreme fatigue. Tr. 25. Garcia first notes that the SAMCs answered "yes" to the question of whether the individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms were substantiated by the objective

9

medical evidence alone. ECF No. 14 at 7–8 (citing Tr. 96, 101). Garcia then argues that this answer means the ALJ was in fact rejecting or failing to evaluate the SAMCs' medical opinion, rather than his own testimony, by rejecting Garcia's complaints of extreme fatigue. *Id.* at 8 (citing, *inter alia*, 20 CFR 404.1527(e)(2)(ii); *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000)). But nowhere in the SAMCs' opinions do they state that Garcia has extreme fatigue, only "Essential Hypertension" and "Other Disorders of Gastrointestinal System." Tr. 96, 101. The ALJ is clear in his decision that he is rejecting Garcia's claim, not the SAMCs' opinions, which the ALJ explicitly evaluates in a different part of his decision. Tr. 25, 32–33. Garcia's attempt to link these two distinct pieces of evidence from completely different sources is unconvincing.

Garcia also argues that because cirrhosis may cause fatigue according to a Mayo Clinic webpage, and the ALJ found that Garcia had cirrhosis, the ALJ erred by not also finding that Garcia suffered from extreme fatigue. ECF No. 14 at 8. But the fact that a condition may have a particular symptom does not mean that it always does. Garcia does not cite any medical opinion in the record that supports a finding of extreme fatigue. As the ALJ notes, extreme fatigue only appears in Garcia's own testimony, which the ALJ found inconsistent with the objective medical evidence and other evidence. Tr. 25.

The ALJ has the responsibility to resolve questions of credibility. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). An ALJ is "best positioned" to make a determination that a claimant's subjective complaints are not credible and that the medical evidence is more persuasive than the claimant's own testimony. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). The ALJ properly weighed the evidence of record and found that Garcia was not credible in his claim of extreme fatigue.

## V. CONCLUSION

Because the record lacks medical source evidence regarding the effects of Garcia's upper extremity impairments on his ability to work, remand is proper. However, the ALJ's rejection of Garcia's subjective complaints of extreme fatigue does not constitute reversible error.

## RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Senior United States District Judge Terry R. Means **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **February 15, 2018**, to serve and file written objections to the United States Magistrate Judge's proposed

findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

Signed February 1, 2018.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE